Good morning ladies and gentlemen. Our first argument for this morning will be Estrada-Hernandez against Lynch. We'll hear from Mr. Haas here. Good morning. Good morning. May it please the Court, Jaime Haas on behalf of the Petitioner, Mr. Julio Estrada-Hernandez. Thank you, Your Honours. This is the first time I've been before the Court and first time in Chicago. Thank you for the opportunity to be here. Let me begin this case by saying the government's right. I've never really uttered those words before, but let me explain the reasons why. They're right on some points, but not completely in the entire argument. It is true that Petitioner did not focus on pursue the naturalization citizenship claim before the agency and before the Court. It is true that he did not argue that his immigration convictions – I'm sorry, his convictions in his criminal record were not valid for immigration purposes. It's even true that Petitioner did not claim that he was not technically advised of the right to counsel. What is not true is that Mr. Estrada has not raised a culpable claim in his petition that would, if granted, would warrant a remand back to the immigration judge. It all stems back to one immigration hearing before Judge DiMarzio. I have appeared before Judge DiMarzio on several occasions when he was with the Los Angeles Immigration Court. I'm not going to stand here and say that he was belligerent to the respondent, that he acted in some way that was inappropriate. It looked like he asked repeatedly whether Mr. Estrada wanted a lawyer, and he kept saying no, I don't, and I'm not really sure what else the judge could have done. What is at issue is a significant interference with the right of counsel, not technically the – What? A significant interference with the right of counsel. But he can't be interfered when he keeps volunteering to give Mr. Estrada the chance to make further efforts to obtain counsel. There's no right to have counsel appointed for you in immigration proceedings. That is correct, but there is a regulation that indicates that the immigration judge must advise the individual of the immigration process as well as the right to counsel. Once the immigration judge learns the fact that the person is not represented, he must advise the individual whether or not he wants counsel, and right then and there, the regulations indicate that it's a requirement that the respondent must answer yes or no. Judge DiMarzio did not – that didn't happen in this case. The answer to Judge DiMarzio's question was non-responsive. He, the respondent – I'm sorry, the petitioner in this case is the respondent in the immigration proceedings. The individual pursues his naturalization claim. At that point, I think it actually – Judge DiMarzio was trying to assist the respondent at that point and tried to resolve the naturalization claim because had he found that he was a U.S. citizen, he would have terminated the proceedings or at least released him on bond. But that is still a technical violation of the regulations. The regulations understandably are presented or worded that way to avoid exactly what happened in this case, an exploration or a discovery as to – Well, how do you avoid it if he won't answer the question? You force him. You tell him, answer the question. It's not the first – He kept asking him. Only after he discovered that he was not a United States citizen. This is an individual who had years thought he was a U.S. citizen through his interactions with immigration officials. At that point – But that – the problem is that's a legal question, actually, and I haven't seen anything in the briefs to make me think that the government was incorrect, that he didn't happen to fit the category of citizenship that he thought because his father doesn't naturalize until he's after 18. And I certainly don't see coercion to proceed without a lawyer. The judge gives him actually a pretty big description of what that will entail. He says, if you wish to represent yourself, it's your right to do so. And he goes on and talks about all the things that will go on. I can't believe Mr. Estrada couldn't have said, I would like to rethink, you know, I'd like to have a lawyer. And I also recall that the judge, even at the point where he's talking about returning to Mexico, says, do you need more time to think about asylum? I've seen a lot worse things with immigration judges than this, and there's some harmless error concept, too, even if he didn't exactly utter the right words. Judge, when the immigration judge offers him that opportunity at the end to pursue an application for asylum, at that point he had already made the finding that he was an aggravated felon. It was essentially a non-issue. Is there any serious way to contest the aggravated felon finding? Absolutely. That's through the arguments presented through the inadmitted issue that was presented to the agency as well as to the court. But what would it be? I thought the government introduced the convictions. Right. I mean, I certainly understand if he were a citizen, this is all different, but that I don't see in the record, and I don't see how he could, once he's not a citizen, fail to qualify as an aggravated felon. The respondent at that point defends the action in terms of raising the issue of whether or not adjustment of status falls within the definition of 101-813-A. That is the definition which requires that the person or defines what, in fact, is admitted to the United States. This is the admission argument. Correct. You can save the rest of your time for rebuttal if you'd like. Thank you, Your Honor. Ms. Phillips. Good morning. May it please the Court, Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I can certainly pick up where he left off. Basically, there was no violation of statute of regulations regarding the offering of time to get counsel in this case. This Court has found that the statute and regulations provide all the, quote, due process to which an alien is entitled. It's not, quote, due process. Aliens are entitled to actual due process under the Fifth Amendment, but we have said, as you say, that that is reflected quite adequately in the regulations. Yes, exactly, Your Honor. From that standpoint, his sole, and now I'm going to use quotes again, his sole argument that he specifically stated in his brief was that he was denied the opportunity to get counsel. That was the argument that he set forth. Your Honors, that's why I've set up my response brief in the manner I did because there was no denial of any opportunity in that that. I saw that the judge specifically went back. I understand he's complaining that the right then and there, he didn't get a response immediately because when he was asked, do you want time to find counsel? The petitioner said, what I want to know right now is why they told me I was a citizen. And so he kind of was a little bit demanding in that regard and wanted to know what's going on here. And the immigration judge took the time to try to work through that a little bit. So there is this somewhat odd exchange where the judge says, do you want me to continue your case to give you more time to get a lawyer? Then he says, no. Okay, fair enough. Then the judge, do you wish then to represent yourself? And then he, that's a little equivocal. He says, yes, I mean, what other choices do I have? And the judge then says, I'm willing to continue. Now, this list I take it is kept at the immigration court of people who are willing to do this pro bono because money is a big issue for a lot of- Right. And he was given a list of the pro bono attorneys. And in fact, he said he had, and I'm quoting again, already, he had already contacted them. And one assumes fruitlessly from this. I can't say for sure, but that is the impression that was given. You have to remember a couple of things though about this case. First of all, this guy has six criminal convictions. He was found removable on four different bases. He's no stranger to this idea of counsel and reaching out to a counsel and a proceeding. And I understand of course, that immigration proceedings are different than criminal proceedings in very distinct ways. But the idea of going to find counsel and representation is one that easily translates. The other thing to remember is that his proceedings were conducted in English. And that's critical because I think- He doesn't even speak Spanish, does he? That was the impression that was given on the record. He specifically wanted the proceedings in English. And so sometimes you could say, well, maybe someone didn't fully understand. It wasn't in their native language. Here, that's not the case. So I think that those are important things to keep in mind. Tell me about the list of attorneys. He was given a list of attorneys? That's what the record reflects, that there is... I have to be honest, I have not been to the immigration court to see exactly what this list might look like, but I understand it's a pretty standard list. And it was reflected in the record that that is what was given to him. A pro bono counsel? Right. Counsel willing to make their services available. And he confirms on the record that he did receive it and that he did contact, that he made whatever attempts he wanted to contact in that regard. So that's what's made clear on the record. So from that standpoint, the statute and regulation were fully complied with because that, as your honor pointed out, it's not that we're required to provide the counsel at no expense. So he has to take it upon himself to do that. So knowing that the statute and regulation were complied with, there doesn't seem to be any violation of that opportunity to get counsel. Can I ask you something? I know he has not, at least as my understanding from his brief, that he has not carried forward to us any argument about his citizenship. It's a strange statute relying on one parent in some circumstances and both parents in other circumstances. And when I these things, it makes me wonder whether there's been any litigation anywhere in the country over the validity of this system. You mean in terms of... Is it permissible to say you can obtain citizenship only through one parent, only if there's a legal separation and it has to be both parents? It seems completely arbitrary to me. And so I'm just wondering whether that whole arrangement has been litigated anywhere. I think the most recent litigation, for example, has to do with maybe some equal protection challenges in terms of... That's what I would expect. Right. In terms of, I think it was mostly because you go through the mother and a lot of petitioners were complaining that the father should have the same... For example, 309C is born out of wedlock. You get citizenship if you're born out of wedlock. And if you can show one year of physical presence by the mother, then you can... And as long as she wasn't married to the father at the time of the birth of the child, you can acquire citizenship in that regard. And there has been some types of equal protection challenges going on in terms of why doesn't the father enjoy the same lesser physical presence showing. It's kind of going off on a tangent. I want to make clear that nothing was raised here. And that's why the government did not go into any of the citizenship claim, because what he presented was basically, I thought I was a citizen. And then he was told, well, here's why you're not based on what you're telling us. And it was dropped. It was dropped completely on appeal to the board. And I understand that citizenship claims do not have to be exhausted in that regard. But to this very minute, we haven't seen anything coming in as a claim to citizenship in that regard. So the government did not address any of that and has not asked for any transfer or anything because we don't see any genuine issue of material fact because of what we know the facts to be regarding what the statute requires in his testimony. And on the issue of the lack of exhaustion, that's why the government is asking the court not to address or say that it doesn't need to address this question of adjustment of status as an admission because it wasn't really addressed. First of all, he didn't challenge specifically two of the bases that were used. He was charged with four different bases of removal. And the board specifically found in its decision that two of them weren't addressed. And so the court can find on exhaustion principles alone. And then when you couple that with sort of a waiver idea that the brief does not really challenge the board's finding in that regard to attack the board's finding of the lack of exhaustion or meaningfully dispute how the board disposed of the claims, there's also a jurisdictional issue there as well. And so it's the government's position that the court doesn't need to reach the admission question and the court can decide it on the basis of exhaustion and waiver. However, if the court wants to reach the admission issue, the board did decide that on the merits and in the context of the aggravated felony specific ground of removal, which is why our brief's arguments were limited to that even though the same general language does appear in all of the provisions under which he was charged with. So I wanted to get to that question. This court has two decisions that are worth looking at, Abdelkader and Lima-Slosa. And I think, unfortunately, my opposing counsel has not, in his brief, recognized that where you see adjustment of status as an admission matters and context. This court has said context matters. And that's the court decided Abdelkader in the CIMT context, there was different language very specific in that statute with respect to the date of the admission, making it seem as though there's one admission and then you're sort of cherry picking in a situation where an alien has two admissions because he entered and then later adjusted. Here, it's after any admission. So the language itself is just readily distinguishable. This is in matter of Rosas, which has more recently been affirmed in Chavez-Alvarez, and the board also issued matter of Agour, all addressing the idea of adjustment of status as an admission in different contexts. And no court has found against matter of Rosas. And that is going on decades of this idea that people who adjust their status are not considered inadmissible. Well, that was a big change in the entire immigration laws some time back to change the idea of admission versus non-admission and some anomalies in the law, as I recall. Yes, Your Honor. And so it's been 20 years and we've been operating under this system and to say after 20 years, wait a second, the whole system's messed up. It's a little bit counterintuitive. It does happen. Certainly, but here it leads to absurd results. And I think that's the key because that's how the courts have avoided this issue. They have found that it's basically absurd that you are, you know, therefore not subject to any of the provisions. Basically, an LPR would have to leave the country and try to come back in in order to ever be charged and commit as many crimes as they want as AGFELs and not ever be subject to removability. It leads to an absurd result. I see that my time has expired. Unless the court has any further questions, the government will rest on its brief. Thank you. Thank you. Anything further, Mr. Hasso? Regarding the issue of whether or not the respondent had contacted other immigration attorneys, we know that it was factually impossible for him to have contacted an immigration attorney regarding the entire matter of this case. And the reason why is because the record is clear. The I-261, which is an additional charge, was filed on the day of the hearing. And he's indicated on the day of the hearing that he had contacted immigration attorneys. So it's just factually impossible for him to have discussed the issues contained in the I-261 with anybody on the day of the hearing. But all he had to do was say, yes, Your Honor, I'd like a little more time. And it sounds like he would have had that opportunity easily. And Your Honor had raised an interesting point, which is the transcripts reveal essentially that he was going through the motions at that point. He was devastated at the fact that he's not a citizen of the United States. And the transcripts reveal, even at the end, that he's still trying to reel that possibility. Even after the judge enters his decision that he's removable from the United States, he goes back on the record and discusses the citizenship claim even further. But you haven't preserved anything about the citizenship issue. No, Judge. I mean, I'm sure hearings are upsetting for people in general, but he does have the chance to give himself a little time to think if he had taken the judge's invitation. Only after he's been informed that the only defense that he recognizes that he has is in fact been destroyed, has been disposed of. And that result, it only comes as a immigration judge's question as to whether or not he wanted an attorney at that point in time. The immigration judge, we can't get around the fact... So what do you think an attorney really... I mean, I'm still baffled. What do you think an attorney could have done for him? Where's the prejudice? It comes to the fact that the aggravated felony provision is the only issue in the case that prevents him from receiving or at least applying for an application for relief. I mean, he's not unusual in that respect when aggravated felony status is at issue. Right. So he doesn't have to address the other issues of whether or not he has multiple crimes involving maltreatment or a controlled substance violation. Those are encompassed within the relief of cancellation removal. So it's only the provision of the aggravated felony that he has to try to defeat. And in that regard, any immigration attorney would have realized that there are countless decisions that have been criticized in the board's interpretation of whether or not the statute at 101-813 is in fact ambiguous or not. Adjustment of status is clearly by this as well as the fourth, the seventh. That is not ambiguous. The words of the statute are exactly the words of the statute. If Congress, in fact, if Congress cannot contemplate the consequences, all the consequences of its enactment, that doesn't excuse the judicial system from actually giving effect to those same words. It is what it is in terms of the plain language of the statute. An immigration attorney would have picked up on the fact that there exists multiple case law that that adjustment of status is not in fact an admission to the United States, would have then argued to the immigration judge that he's not an aggravated felon because an aggravated felon could only be an admitted individual to the United States. But you admit that the law was designed to close that gap. It means that somehow people who are here illegally or who have never been admitted are better off than people who've been properly admitted. And that's absurd. I think actually the case law opens up that possibility. The Fourth Circuit's decision actually indicates we're not expressing an opinion as to whether or not the aggravated felony provision is in fact an admission under 108.13. So it actually left open that possibility for an argument. It was right for discussion and an argument for the immigration judge. The absurd results, the only case law that is actually agreed with Rosas is Ocampo from the analysis, which is essentially that there's a loophole, that the petitioner did explain the loophole situation as to why there would be a difference of treatment between the LPRs and non-LPRs. If you simply rely on the fact that there's a plain language rule, you never get to that discussion. The statute, I'm sorry. Okay, your time is up. Thank you, Your Honor. Thank you very much. We appreciate your presentation. Thanks as well to the government. By the way, were you appointed? I know you are. You're a volunteer. Yes. Thank you for volunteering. Yes, and we will take the case under advisement.